476 P.2d 684

**Betty Lou PORRECA, Appellant,**

v.

**Charles C. PORRECA, Appellee.**

**No. 2 CA–CIV 773.**

Court of Appeals of Arizona, Division 2.

Nov. 17, 1970.

Rehearing Denied Dec. 9, 1970.

Review Denied Jan. 26, 1971.

Silver, Ettinger & Karp by James Silver & Gene Karp, Tucson, for appellant.

Messing & Hirsh by Robert J. Hirsh, Tucson, for appellee.

KRUCKER, Judge.

Appellant, Betty Lou Porreca, was divorced from appellee, Charles Porreca, in 1967. The court, sitting without a jury, awarded Mrs. Porreca $700 a month alimony for two years. On appeal, this court reversed that two-year limitation and remanded for redetermination. Porreca v. Porreca, 8 Ariz.App. 394, 446 P.2d 500 (1968). The order amending the decree in April, 1969, set $700 a month through April, 1969, $450 a month through July, 1970, and $200 a month thereafter for the next three years. Mrs. Porreca now challenges that determination.

Plaintiff raises the following issues on appeal:

1. When alimony is awarded, can it be changed or cut off at a date in the future, and if so, what evidence is necessary to justify the termination?

2. Can a husband have alimony payments reduced when he voluntarily worsens his position?

3. Did the superior court abuse its discretion in its order reducing the already existing alimony payments in this case?

At the time of the divorce, plaintiff was a housewife, with a teenage daughter, and defendant was a private practicing osteopathic physician. Plaintiff's standard of living was set at the time of trial as requiring $700 per month. At that time she was attending the University of Arizona to get a teaching certificate and anticipated obtaining it in 1970. The trial court thus set alimony at $700 for two years.

In the first opinion of this court, we reversed as to the two-year limitation on alimony because there was no evidence in the record to show that Mrs. Porreca would in fact be able to sustain herself after that time at the $700 amount.

The transcript of the second hearing does not really add much to that of the original hearing. There is no evidence as to exactly when Mrs. Porreca will complete her training, although at the first hearing in June, 1967, she testified that she had two and one-half to three years to complete. There is no evidence as to what her precise income will be if, and when, she completes her schooling and obtains employment. The record is equally devoid of evidentiary support for the contention that two years after she commences teaching, assuming it proceeds as projected at the first trial, she will earn enough to justify the alimony cut to $450, or that in three years she will need no alimony at all. There is, however, evidence that Mrs. Porreca is able-bodied, healthy and capable of self-support.

We have studied the dilemma posed by this case and have concluded that there was an underlying error in our first *Porreca* opinion. There, we said that the court abuses its discretion when, after determining a wife is entitled to so much alimony for support and maintenance, it terminates that amount based merely on the probability that the wife will become employed. We strongly suggested that once alimony is fixed, only an actual change of circumstances can justify termination.

We do not believe this is the majority rule or even a desirable one. We believe a trial court should have the discretion, when initially awarding alimony, to give a wife time to reasonably make a transition into a new life. At the same time, the court should be able to say how long an *able-bodied spouse* can receive support and live off the labors of the former spouse. To forbid the trial court to so fix alimony would be to say there must be alimony forever, as long as the wife does not work, or there shall be none at all. We find these alternatives too inflexible.[1]

We therefore affirm the trial court's determination. We believe the court could decide that Mrs. Porreca, whether or not she makes $700 a month on her own, must eventually become self-supporting, and by the time the present decree terminates her payments altogether, she will have had help from her husband for about six years. This does not deprive her of her right to judicially complain should her able-bodied status alter prior to

---

1. Another alternative is suggested by the recent case of McKendry v. McKendry, 2 Wash.App. 882, 472 P.2d 569 (1970), in which the failure by an able-bodied spouse to obtain employment after a reasonable period was held a change of circumstance justifying termination of alimony. In the instant case, we are saying the court can pre-determine the reasonable time, instead of requiring another hearing and more expense after such a time has passed.

the time the alimony ceases. However, should she eventually become self-supporting and the alimony ceases, we believe two separate lives have been created and she can no longer require her ex-husband's support. The emotional, economic and social dependence of two able-bodied ex-spouses usually must be severed at some reasonable point in time.

Judgment affirmed.

HOWARD, C. J., and HATHAWAY, J., concur.